Weldon, J.,
delivered the opinion of the court, in answer to the questions presented by the report:

Benjamin P. lamberton and Charles Y. Gridley.

The question presented is:
Is Lamberton, as fleet captain, entitled to share under paragraph third, taking one-hundredth part of all the bounty; *208 or does ho share in proportion to his pay with the other officers and men on board the Olympia?
A petition has been presented by the administratrix of Charles V. Gridley, deceased, who served as captain of the Olympia at the time of the engagement, and her counsel has notified the Auditor that his client claims “for the captain’s estate in his capacity as captain and also as fleet captain.”
A letter from the Secretary of the Navy, dated July 31, 1900, filed August 1, shows that “ Captain Benjamin P. Lamberton, U. S. Navy, served as fleet captain during said engagement.”
The statute prescribing the fleet captain’s share in the bounty is the third paragraph of section 1631.
The Naval Regulations do not appear to define the duties of fleet captain by that name. Articles 327 to 312. prescribe the manner of the appointment and the duties of chief of staff.
In the ai’gument on the report, counsel for Captain Gridley conceded that his representative is only entitled to share in the bounty on the basis of captain of the Olympia, and the court decides that such is the legal basis of his representative’s right to share in the bounty.
In relation to the claim of Captain Laniberton, who was the fleet captain during the engagement, the court decides that he is entitled to share as fleet captain as follows, to wit:
Under paragraph 3, of section 4631, Revised Statutes, one-hundredth part of one hundred ninety one thousand four hundred dollars (<¡5191,400),'the total bounty money, one thousand nine hundred fourteen dollars (§51,914), and in addition thereto is entitled under paragraph 5, of said section 4631, Revised Statutes, to share in proportion to his pay with all others doing-duty on board. Instructions heretofore filed are hereby ordered to be amended so as to conform to this order.

Case of Charles P. Kindleberger (U. S. S. Olympia).

On May 1, 1898, Kindleberger held a commission as assistant surgeon. A vacancy had occurred to which he was entitled to be promoted on July 1, 1897. He was not promoted until February 13, 1899, when he was commissioned passed assistant surgeon to rank from July 9, 1897. These facts ap *209 pear in the above-mentioned letter from the Secretary of the Navy of July 31,1900. It is not stated in the letter when this officer was examined, but that he was duly examined may be presumed from the fact of his being commissioned.
The question presented is whether Kindleberger is entitled to share as passed assistant surgeon or as assistant surgeon.
In this connection reference may be made to Revised Statutes, section 1562: “If an officer of a class subject to examination before promotion shall be absent on duty and, by reason of such absence or of other cause not involving fault on his part, shall not be examined at the time required by law or regulation, and shall afterwards be examined and found qualified, the increased rate of pay to which his promotion would entitle him shall commence from the date when he would have been entitled to it had he been examined and found qualified at the time so required by law or regulation; and this rule shall apply to any cases of this description which may have heretofore occurred. And in every such case the period of service of the party in the grade to which he was promoted shall, in reference to the rate of bis pay, be considered to have commenced from the date when he was so entitled to take rank.” And to act of June 22, 1874, chap. 392, 1 Sup. R. S.; 18 Stat. L., 191:
“ Sec. 1. That on an after the passage of this act any officer of the Navy who may be promoted in course to fill a vacancy in the next higher grade shall be entitled to the pay of the grade to which promoted from the date he takes rank therein, if it be subsequent to the vacancy he is appointed to fill.”
The court determines that the claimant should share in the bounty as a passed assistant surgeon, taking rank from July 9, 1897, on the basis of $2,000 per year. This view of the rights of the claimant is sustained by the decision of this court in the case of Blandin (35 C. Cls. R., 568).

John M. Ellicott (U. S. S. Baltimore).

On May 1, 1898, Ellicott held a commission as lieutenant, junior grade. A vacancy had occurred on April 23, 1898, to which he was entitled to be promoted, and on July 16, 1898, he was commissioned a lieutenant to take rank from April 23, 1898, as appears in the Secretary’s letter of July 31.
*210 The claimant having been commissioned as lieutenant to take rank from April 23, 1898, is entitled to share in the bounty on the basis of $2,400 per year.

Reginald H. Smith (U. S. S. Baltimore).

On May 1, 1898, Smith held a commission as assistant surgeon. On March 30,1899, he was commissioned passed assistant surgeon to rank from April 3,1898, as appears in the Secretary’s letter.
The claimant having taken rank as passed assistant surgeon from April 3, 1898, he has a right to share in the bounty on the basis of $2,000 per year.

George H. Hayward (U. S. S. Baltimore).

On May 1, 1898, Hayward held-the rank of ensign, and was entitled to promotion to lieutenant, junior grade, on April 13, 1898, as appears by a letter from the Navy Department dated September 20, 1900, filed September 22. The letter states that “this officer was ordered to examination on the Asiatic Station April 18, 1898, the result of which was not received in the Department until September, 1898.” The letter does not state that Hayward received his promotion, but the inference is that he did.
The records of the Department show that Hayward received a commission as lieutenant, junior grade, to rank from April 13, 1898.
The claimant took rank as lieutenant, junior grade, from April 13, 1898; therefore his respective rate of pay in the service on May 1, 1898, was $1,800 per year, and he should share in the bounty on that basis.

William L. Howard (U. S. S. Boston).

On May 1, 1898, Howard held a commission as lieutenant, junior grade. On July 26, 1898, he was commissioned lieutenant, to rank from March 10, 1898, as appears in the Secretary’s letter of July 31.
The claimant is entitled to share in the bounty on the basis of $2,400 per year.

*211
Samuel S. Robison (U. S. S. Boston).

The Department’s letter óf September 20 states that a vacancy in the grade of lieutenant, junior grade, occurred for Samuel S. Robison on April 23,1898; * * * his com-' mission in the next higher grade was not issued until December 6, 1898.”
Robison took rank and was paid as lieutenant, junior grade, from April 23, 1898; accordingly his rate of pay in the service on May 1, 1898, was $1,800 per year, and he should share in the bounty on that basis.

George G. Seibels (U. S. S. Petrel).

On May 1,1898, Seibels held a commission as assistant paymaster. He was entitled to promotion on March 6,1898, and on July 16, 1898, he was commissioned passed assistant paymaster, to rank from March 6, 1898.
The claimant is entitled to share in the bounty on the basis of $2,000 per annum.

Casey B. Morgan (U. S. S. Raleigh).

Morgan appears on the filed prize list as ensign, and the Department’s letter of September 20 states that.he “was, on February 16, 1898, entitled to the grade of lieutenant, junior g’rade, and on August 15, 1898, his commission in the grade •of lieutenant, junior grade, was issued.”
He took rank and was paid as lieutenant, junior grade, from February 16,1898. His respective rate of pay on May 1,1898, was $1,800 per year, and he is, therefore, entitled to share in the bounty on that basis.

Lieutenant Elliott and men (U. S. S. Baltimore).

A memorandum on the filed prize list states that Lieut. William P. Elliott was detailed in charge of four men— George C. Rees, Joseph Heil, James J. Manning, and John T. Barrett — who were detailed for duty on board the U. S. R. C. McCulloch April 26, 1898, and returned May 13, 1898. The names of all appear in the prize list of the Baltimore, but not in that of the McCulloch.
*212 These men are entitled to share in the bounty as of the crew of the Baltimore. The question as to whether they are regarded as of the crew of the Baltimore or the McCulloch is immaterial, as neither the rights of the claimant nor the rights of others are affected by the difference.

Richard Witter and others.

Another memorandum on the filed prize list of the Baltimore states that four men — Richard Witter, Maurice J. Roche, August A. Lindeburgh, and Earl C. Mathews — were transferred to the naval hospital at Yokohama on April 11, 1898, with their accounts, and returned on board August 8, 1898. Their names do not appear in the prize list. .
The claimants are not entitled to share in the bounty. It was not the fault of the claimants that they were temporarity absent, but their misfortune. The fact that they were in the hospital shows that they were unfit for military duty, and they were absent because of that condition. So that it can not be held that within section 4633, Revised Statutes, they were temporality absent on duty.

William Mcosen (U. S. S. Boston).

The name of William Masen, carpenter’s mate, second class, appears in the prize list. A memorandum states that he was sent to the Government civil hospital, Hongkong, April 15, 1898, but does not show when, if ever, he returned on board the Boston.
For the reason stated above, the claimant is not entitled to. share in the bounty.

Olsen and Stamati (U. S. R. C. McCulloch).

A memorandum on the filed prize list states that Olaf Olsen was placed in hospital at Aden on March 15, Í898, and Stamati John (John Stamati?) in hospital at Hongkong on April 24, 1898. Their names do not appear in the prize list of the McCulloch.
The claimants are not entitled to share in the bounty.

Additional pay for detention.

Revised Statutes, section 1572. “All petty officers and persons of inferior ratings who are detained beyond the terms of *213 ■service, according to the provisions of section 1422, or who, after the termination of their service, voluntarily reenter, to serve until the return to an Atlantic port of the vessel to which they belong, and until their regular discharge therefrom, shall, for the time during which they are so detained or so ■ servo beyond their original terms of service, receive an addition of one-fourth of their former pay.”
Additional pay is the full compensation for detention and •does not increase other allowances. Respective rates of pay refer to the regular rates of pay.

Certain members of the crew (U. S. S. Olympia).

To the filed prize list is attached a memorandum that certain ■specified members of the crew are “entitled to one-quarter additional pay for detention beyond period of enlistment.”
Shall these men share in the bounty on the basis of the higher rate of pay?
They are entitled to bounty as indicated above.

Smith and Warner (U. S. S. Raleigh).

Memoranda on the filed prize list state that B. F. W. Smith, .seaman, and George T. Warner, gunner’s mate, third class, .are entitled to one-fourth additional pay for detention beyond period of enlistment.
Shall Smith and Warner share in the bounty on the basis of the higher rate of pay ?
They should share as indicated above.

Twenty per cent additional pay.

Marines (U. S. S. Boston).

A memorandum on the filed prize list states that the marines .are “ entitled to 20 per cent additional. Special Circular, No. •40, June 8, 1898.”
“Sec. 6. That in time of war the pay proper of enlisted men ■shall be increased twenty per centum over and above the rates of pay as fixed by law: Provided, That in war time no additional increased compensation shall be allowed to soldiers performing what is known as extra or special duty: Provided, further, That any soldier who deserts shall, besides incurring the penalties now attaching to the crime of desertion, forfeit all right to pension which he might otherwise have acquired.”
*214 Are the above-mentioned marines entitled to share in the Boston’s proportion of the bounty upon the basis of their minimum rate of pay plus 20 per cent thereof ?
That the enlisted men of the Marine Corps are entitled to this 20 per cent in time of war is a matter of statute. (Chapter 191, 30 Stat. L., 365, and R. S., sec. 1612.)
The only question is the basis upon which the 20 per cent shall be computed.
The Comptroller of the Treasury has decided that the 20 per cent does not apply to the additional pay which accrues to enlisted men for length of service (4 Dec. Comp. Treasury, 668), and accordingly it has been computed on the rates of pay prescribed for the respective ratings in the first year of the first enlistment.
The Auditor for the Navy, Treasury Department, “regards the 20 per cent increase as a part of the regular pay of marines in time of war, and in preparation of prize lists of vessels captured during the war with Spain has included the increase, basing the shares of marines on their regular pay plus said 20-per cent” (of their minimum rates of pay, as per decision of the Comptroller, supra). The men are entitled to share in the bounty on the basis of minimum pay plus 20 per cent.

Desertions.

Kondo Yoshi deserted from the McCulloch on May. 8,1898, and Ah Sing from the Petrel on June 2,1898, as appears from memoranda on the field prize lists of said vessels.
Revised Statutes, section 1624, provides that a court-martial shall adjudge what punishment shall be imposed for desertion from the Navy. Under the above section 6 of the act of April 26, 1898, a soldier forfeits all right to pension, in addition to other penalties.
It has been held in substance that in prize law the rights of the individual captors become fixed at the moment of the capture. (Swan, 19 C. Cls. R., 52.) Applying'that principle by analogy to this case, the court decides that the desertion of soldiers entitled to share in the bounty does not inure to the benefit of those remaining in increasing the amount to be distributed. The bounty is given by the United States to each *215 . soldier for bis individual merit, and if there is a forfeiture the forfeiture in its results goes to the credit of the United States, and not to the distributees.

Frcmh B. Bandall.

Bandall was chief engineer on the McCulloch. He was taken suddenly ill at half past 12 and died at eight minutes past 2 in the morning of the day of the engagement.
Admiral Dewey’s squadron entered the south channel to Manila Baj- about 11.30 p. m., April 30, 1898.
After half the ships had passed, a land battery of the enemy opened fire, and the Boston and McCulloch replied.
The exact time of this first exchange of shots does not appear, but from all the circumstances the reasonable conclusion is that it was near midnight, and about a half hour before Bandall was taken ill, and two hours before his death.
About 12.15 a. m., May 1, a shot was fired by the enemy from El Fraile Island, and replied to by the Baleigh.
About 12.25 a. m., May 1, two shots were fired by the enemy from a shore battery; the Concord replied to both, and about twenty minutes later fired a third shot “at a moving light, and it was extinguished.”
It does not appear that there was any firing bjr either side between 12.45 a. m., May 1, and about 5 o’clock in the morning, when the final and principal part of the engagement began, but this was not an interim between the close of one battle and the commencement of another; it was merely a cessation of firing for the time being, apparently occasioned by both sides waiting for daylight.
The firing on the McCulloch and the return of the shots in law may be regarded as a part of the engagement, and therefore Frank B. Bandall, chief engineer on the McCulloch, was then borne upon the books of and doing duty on board that vessel and is entitled to share in the bounty.